## ILLINGWORTH *v.* ATHA *et al.*

*(Circuit Court, D. New Jersey.* March 25, 1890.)

1. PATENTS FOR INVENTIONS—FRAUDULENT APPLICATION—INJUNCTION.

A complainant who alleges that defendant induced the commissioner of patents to decide in his favor, as to the priority of an invention, by means of false testimony and misleading statements, but who nowhere particularizes the falsehood or perjury, and who introduces practically the same evidence on the hearing of a motion to restrain defendant from receiving letters patent that had already been considered by the comissioner, is not entitled to a preliminary injunction.

2. SAME—UNSUCCESSFUL APPLICATION—EQUITABLE JURISDICTION.

Rev. St. U. S. § 4915, which gives an unsuccessful applicant for a patent the right to apply to a court of equity, and which provides that an adjudication by the court in the applicant's favor "shall authorize the commissioner to issue such patent" to to the applicant, confers on the court no power to enjoin the commissioner from issuing letters patent in favor of one whom he has adjudged entitled thereto.

3. SAME—INJUNCTION.

Rev. St. U. S. § 4921, which confers power on courts having jurisdiction of patent cases to grant injunctions to prevent the violation of any right "secured by patent," does not confer any authority on such courts to issue an injunction in favor of one who has failed to secure a patent.

4. FEDERAL COURTS—JURISDICTION—COMMISSIONER OF PATENTS.

Under Act Cong. March 3, 1875, (18 U. S. St. 470,) as amended by Act March 3, 1887, (24 U. S. St. 552,) and by Act Aug. 13, 1888, (25 U. S. St. 434,) which provide that no civil suit shall be brought in the federal courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant, the circuit court of New Jersey has no jurisdiction over the commissioner of patents, whose official residence is the District of Columbia.

In Equity. On bill for injunction.

*Briesen & Knauth,* for complainant.

*Edwin H. Brown,* for defendant Atha.

GREEN, J. This suit is brought under section 4915 of the Revised Statutes of the United States, which is as follows:

"Whenever a patent on application is refused, either by the commissioner of patents, or by the supreme court of the District of Columbia upon appeal from the commissioner, the applicant may have remedy by bill in equity; and the court, having cognizance thereof, on notice to adverse parties, and other due proceedings had, may adjudge that such applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the commissioner to issue such patent on the applicant filing in the patent-office a copy of the adjudication, and otherwise complying with the requirements of law. In all cases, where there is no opposing party, a copy of the bill shall be served upon the commissioner, and all the expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not."

The complainant, in his bill of complaint, alleges that he was the first and original inventor of certain improvements in ingot moulds, for which he, on the 26th day of August, 1886, made formal application for letters patent; that, prior to the date of the filing of his application, he constructed a model representing said invention, and in the month of July, 1886, he exhibited and explained it to his partner, Benjamin Atha, one of the defendants in this cause; that, after seeing said model, and

after having it explained, Atha, with the intent of defrauding the complainant, and with the purpose of depriving him of his right to letters patent for said invention, surreptitiously prepared an application for a patent for said invention in his own name, and, by the exercise of unusual haste and secrecy, succeeded in filing the same in the patent-office on August 23, 1886, three days prior to the application of the complainant. Upon the filing of complainant's application, an interference between the two applications was declared by the commissioner of patents, and the usual course of procedure in matters of interference was had. Much testimony was taken, but the defendant Atha succeeded in inducing the commissioner of patents to adjudge that he, and not the complainant, was the original inventor of the improvements involved in the issue in said interference, and ordered a patent to be issued to him, and not to the complainant. The bill prays that the defendant Charles E. Mitchell, commissioner of patents, may be restrained and enjoined from directly or indirectly issuing, or causing to be issued, to the said defendant Atha, letters patent for said improvement in ingot moulds, which are in controversy in the said interference; that Atha may be restrained from receiving letters patent for the same; and that the commissioner of patents may be decreed to issue to the complainant letters patent for the invention, of which he claims to be the true and original inventor. The matter now comes before the court upon a motion to make absolute a temporary restraining order, and for a preliminary injunction against both defendants in terms pursuant to the prayer of the bill. The testimony taken in the interference controversy is to be considered testimony in this cause, upon this motion.

The granting of a preliminary injunction is a matter almost wholly, if not entirely, within the discretion of a court of equity. It will never be ordered unless from the pressure of a most urgent necessity, and upon facts from which the resulting equity must be as clear as crystal. The damage threatened to be done, and which it is legitimate to prevent, must be, in an equitable point of view, of an irreparable character. Inconvenience, vexation, even serious pecuniary loss, do not afford justification for the exercise of the power to enjoin,—a power, as Judge BALDWIN, in *Bonaparte* v. *Railroad Co.*, Baldw. 217, emphatically says, "the exercise of which is most delicate, requiring the greatest deliberation and sound discretion, and which is most dangerous in a doubtful case." In the case now under consideration, it is claimed that the right of the complainant to this especial relief arises in this manner: Being, as he asserts, the original inventor of a new and useful improvement in ingot moulds, he exhibited and explained to his partner in business, Benjamin Atha, one of the defendants, a model prepared for the purpose of obtaining letters patent; that Atha, in fraud of the rights of the complainant, surreptitiously prepared an application for letters patent covering the entire invention of the complainant, and, by the exercise of unwonted haste and diligence, succeeded in having it filed three days before the complainant filed his application. The two applications were practically similar in their claims, and necessarily an interference was

declared. In the controversy which followed, the main issue was the priority of the invention. This issue was decided against the complainant, and in favor of defendant Atha, first by the examiner of interferences, next by the examiners in chief, (although they suggested, as an amicable settlement, a joint patent to the complainant and defendant,) and lastly by the commissioner of patents; and it is chiefly upon the alleged impulsive cause of this last decision that the complainant now appeals to the court. In his bill of complaint, he charges that the defendant Atha, by "means of false testimony and misleading statements," induced the commissioner of patents to decide that the defendant Atha, and not the complainant, was the first inventor of the said invention, to the great and irreparable damage of the complainant, and the loss of complainant's rights in and to said invention, and letters patent which might be granted therefor. Parenthetically, it may be remarked that the evidence presented to this court upon the hearing of this motion was the identical evidence presented to and passed upon by the examiners and by the commissioner of patents in the interference controversy, and *that* only, save an affidavit made since that contest, and for the purpose of this suit, by the complainant, in which, *inter alia*, following the wording of the bill of complaint, he declares—

"That, upon false testimony and representations and misleading statements adduced by the defendant Atha, and filed in his behalf, the defendant Charles E. Mitchell, who was then, and now is, the commissioner of patents, was induced to decide that the said defendant Atha, and not your orator, was the first inventor of the improvements in interference."

It is also noticeable that neither in the bill of complaint, nor in the affidavit just quoted from, does the complainant do more than charge, in the most general way, false swearing, false representations, and misleading statements. He nowhere condescends to specify or particularize the perjury or the falsehood. His allegations are most vague. Now, it is a principle settled in equity practice that all the facts and circumstances upon which an application for an injunction is founded must be carefully, positively, and specifically proved. There is a class of cases, as, for example, bills charging fraud and praying a discovery, where, in the very nature of things, positive proof cannot be expected. But these form the only exceptions to the operation of the principle. In other cases it is imperative, and it cannot be contended that this case falls within the exception. So that this case now stands before the court upon the same, and only the same, evidence, as to priority of invention, that has already been acted upon by three different tribunals, each of which, practically, reached the same conclusion, and that conclusion one adverse to the complainant,—a conclusion, too, which the complainant, in effect, admits was justified by the evidence; for his allegation is not that the commissioner adjudged without sufficiency of evidence, but that the evidence upon which the judgment was rendered was false and misleading; and this charge the complainant purposes and expects to substantiate by proof hereafter. I do not think that any case has been made by the complainant to call for the interference by this court with

the rights of the defendant Atha by preliminary injunction. The most that can be said in review of the testimony is, it may be that the commissioner of patents has made a mistake in awarding priority of invention to Atha. At this stage of the controversy, I would be very unwilling to make even that mild criticism. My first impression of the testimony submitted would not justify it. But, if it were otherwise, I should adopt, with full concurrence, the language of Judge LOWELL in *Whipple* v. *Miner*, 15 Fed. Rep. 117:

"I adhere to the opinion given in *Paper Bag Machine Co.* v. *Crane*, 1 Holmes, 429, * * * that the decision of the commissioner of patents is not final, on a question of priority of invention, even between those who were fully heard in the interference; but his decision has great weight, and it would be highly improper to enjoin the successful applicant from receiving his patent upon the mere suggestion that the commissioner was mistaken."

The motion for a preliminary injunction against the defendant Benjamin Atha is refused, and the restraining order heretofore granted is discharged.

Nor can the like motion against the commissioner of patents be granted, and for two reason: First, in my opinion, this court can derive no power to enjoin the commissioner from the statute relied upon by complainant. This is purely a statutory proceeding, and the court cannot go outside the statute which is the foundation of the action to assume to itself powers not found in the purview of the act. The section under consideration has but a single object,—to provide a way by which an unsuccessful applicant for letters patent, notwithstanding the rejection of his claim by the commissioner of patents, may obtain them through an adjudication, in favor of his right thereto, by a court of equity having cognizance of the subject-matter; and, as the object of the section is single, so is the power of the court plainly limited under it to the accomplishment of that object. The prayer of a bill of complaint exhibited to the court under and by virtue of this section would be for a decree that the complainant has established his right to have letters patent issued to him. So far may the decree of the court go, but no further. It may adjudge an issue of the letters, or it may declare the complainant to be without right. In either case the power conferred by this section is exhausted. Nowhere can be gathered, either from the words of the section, nor from its spirit and purpose, an intention on the part of the national legislature to authorize an interference with the commissioner of patents, in the performance of his plain duty, by writ of injunction. I think this is very manifest; but, were it a matter of doubt, such doubt should be resolved against the exercise of so delicate and dangerous a power upon application for a preliminary injunction.

Nor does section 4921, Rev. St., afford any aid to the contention of the complainant. That section does confer upon "courts vested with jurisdiction of cases arising under the patent laws power to grant injunctions according to the course and principles of courts of equity;" but the exercise of the power is limited to a specific purpose, namely, "to prevent the violation of any rights secured by patent." Manifestly the

"right" which is thus declared entitled to claim the protection of the court is that which is "secured by patent;" not that which may thereafter be so secured, but that which is secured at the very time the application for protection is made. There is no pretense of any such right in this case.

But, if I am wrong in this construction of the sections referred to, there yet remains an objection to the granting of this motion against the commissioner of patents which is insuperable. It appears that he has not been served with process in this action, nor has any appearance been entered for or by him. Has this court obtained any jurisdiction over him? I think it has not. By the act of March 3, 1875, (18 U. S. St. 470,) as amended by the Acts of March 3, 1887, (24 U. S. St. 552,) and the act of August 13, 1888, (25 U. S. St. 434,) it is, *inter alia,* provided that no civil suit shall be brought before either of said courts (circuit or district) against any person, by any original process or proceeding in any other district than that whereof he is an inhabitant. There is no allegation in the bill of complaint that the commissioner of patents is an inhabitant of the district of New Jersey. Such statement would be contrary to the fact. Officially, he resides at the seat of the national government, in the District of Columbia. This, then, is an attempt to bring the commissioner of patents within the jurisdiction of the court, not by service of process, but by a motion. But a federal court acquires jurisdiction only by a service of process, or by a voluntary appearance of the party. *Herndon* v. *Ridgway,* 17 How. 424. In this case, neither of these necessary precedent conditions appears. Under exactly similar circumstances, in a suit brought under this section 4915, the Supreme Court has determined that the circuit court for the district of Vermont had no jurisdiction over the commissioner. *Butterworth* v. *Hill,* 144 U. S. 128, 5 Sup. Ct. Rep. 796. The restraining order heretofore granted against the defendant Charles E. Mitchell, Commissioner of patents, is set aside, as improvidently granted, and as to him this bill is dismissed for want of jurisdiction.